### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENIFER A. SWAB, | Civil Action No. 2:21-cv-00379-MJH |
| Plaintiff, | |
| v. | Judge Marilyn J. Horan |
| ROSS/WEST VIEW EMERGENCY MEDICAL SERVICES AUTHORITY, | |
| Defendant. | JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

Plaintiff Jenifer A. Swab, through undersigned counsel, files the following Amended Complaint as follows:

### I.  Jurisdiction

1. The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3), as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1331.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### II.  Venue

2. Venue is proper in the Western District of Pennsylvania, in that this action arises out of events that occurred in or around Allegheny County.

### III.  Administrative Remedies

3. Plaintiff has satisfied all procedural and administrative requirements set forth under Title VII in that:

   a. On or about May 28, 2020, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter the "EEOC"),

        alleging unlawful discrimination on account of her sex;

    b.    On or about May 28, 2020, Plaintiff dual filed her Complaint of discrimination with the Pennsylvania Human Relations Commission (hereinafter "PHRC");

    c.    Plaintiff has received a Dismissal and Notice of Rights from the EEOC and this action was commenced prior to the expiration of the ninety (90) day right to sue deadline; and

    d.    More than one year has lapsed since the date Plaintiff filed her PHRC complaint.

## IV.    Parties

4.    Plaintiff Jenifer A. Swab is an adult individual who resides in Allegheny County, Pennsylvania.

5.    Defendant Ross/West View Emergency Medical Services Authority conducts its business from 5325 Perrysville Avenue, Pittsburgh PA 15229. Defendant is a municipal governmental entity that employs over fifteen (15) individuals.

## V.    Facts

6.    As of the date of this complaint, Plaintiff is the only female employed in a leadership role at Defendant.

7.    The discrimination Plaintiff faced and continues to face on the basis of her sex has been severe and/or pervasive for almost three decades.

8.    An example of the extreme and perverse sex discrimination occurred sometime in or around the 1990's, when a male employee of Defendant repeatedly masturbated into the facility's pillows, including bed pillows from employees' bunk rooms, ambulance stretcher pillows, and couch pillows, ejaculated into the same and left the pillows in the women's bunkroom. Plaintiff had to clean up the messes on multiple

occasions.

9. Despite numerous complaints from Plaintiff and female employees regarding the above, Defendant failed to address the same and the situation continued to persist for seven years, until the President of Defendant's Board of Directors addressed the matter.

10. On August 16, 2007, then part-time Paramedic Ed Davies said to Plaintiff, "I would have rather pulled my tits out of my ass, that would have been less painful than sitting through the PHTLS class" and that the ladder they were removing from the top of the rescue truck was a "one MAN ladder".

11. In addition, Plaintiff has also applied for numerous supervisory positions in the past, the last of which was in June 18, 2010. Defendant did not promote Plaintiff to these desirable positions, but instead promoted less experienced male colleagues over her.

12. Plaintiff has experienced numerous and direct instances of sexual harassment.

13. At times when Plaintiff reported some of the above sexual harassment on numerous occasions to Defendant's supervisory employees including Director Bryan Kircher, Assistant Director Greg Porter, both of whom told Plaintiff that she should "grow thicker skin" and allow incidents such as these to "roll off her back". On other occasions, Assistant Director Porter told Plaintiff, "I'm not entertaining a hostile work environment and you better watch what you say."

14. Plaintiff's complaints of sexual harassment caused her to be the target of retaliation, which Plaintiff viewed as threatening, by being subjected to incidents, including

but not limited to the following:

    a.    ID badge has been vandalized (October 14, 2008);

    b.    nails placed into Plaintiff's tires (February 7, 2009 and late February 2009);

    c.    a mannequin hand with an opened box cutter placed into the hand was left in Plaintiff's locker (April 2, 2009);

    d.    Plaintiff's name panel on bunker coat was turned upside down (September 19, 2011);

    e.    a triage tag stating the word "DEAD" was placed in the left pocket of Plaintiff's bunker coat which was located in an open locker in Defendant's garage (November 21, 2013); and

    f.    Plaintiff's magnetic name tag from the duty board was removed and placed on the ceiling tile crossbars (2013).

15.    Plaintiff reported the above events to Director Kircher and Assistant Director Porter, who took no corrective actions for years.

16.    On October 20, 2008, Director Kircher verbally told the staff, and also sent a memo to the staff, that Defendant would no longer tolerate the vandalism of other employees' personal property.

17.    In late February 2009, Plaintiff contacted the police about the nails in her tires as she believed her physical safety and that of her family to be in jeopardy.

18.    After Plaintiff involved the police, Director Kircher retaliated against her by belittling her to her colleagues regarding matters about which Plaintiff complained.

19.    The pervasive sexual harassment and retaliation Plaintiff faced continued, including but not limited to the following:

    a.    Each year there is an EMS conference at Seven Springs resort.  In or around 2016, Assistant Director Porter had organized a dinner to which he invited all of the Ross/West View personnel in attendance except for Plaintiff;

    b.    From August 2018 to March 2019, a member of Defendant's Board of Directors, Jim Miller, sent Plaintiff sexually offensive texts approximately once a month, the last of which was in April 2019, which included a drawing/graphic of two women having orgasm while riding bikes on a cobblestone road. Plaintiff first reported these texts to Director Kircher in January 2019, who responded to her that the texts were inappropriate but took no action to Plaintiff's knowledge;

    c.    In or around the fall of 2018, a male part-time Paramedic, Tom Cloonan, came into Plaintiff's work area and stated, "Jenny, you are letting your hair grow". When Plaintiff affirmed, he stated what Plaintiff heard as "aah, good for the pool". Plaintiff questioned what he meant by "pool", at which point Paramedic Cloonan said, "no, good for the pull". Paramedic Cloonan then grabbed the back of Plaintiff's head and pulled her head toward his crotch;

    d.    On December 18, 2018, Supervisor Ronald Coleman and Crew Chief Ed Davies publicly blamed Plaintiff for an allegedly empty fuel tank of a rescue truck, when the fuel tank was not empty;

    e.    In February 2019, Board Member Miller thereafter brought shoes into workplace, hovered over Plaintiff waiting for her to try them on in front of him. Plaintiff did not indulge Board Member Miller in trying on the shoes in front of him; however, following this additional incident, Plaintiff once again renewed her complaints about Board Member Miller to Defendant. Plaintiff continues to have to work with Board Member Miller to this day; and

    f.    In late April/early May 2019, vandalism to the women's restroom located on the administrative side of the EMS building that occurred at times when Board Member Miller appeared at the facility.

20.    On February 9, 2017, Supervisor Scottie Garing said, "the patient's penis was warmed in the EMT's mouth" when referencing a sample patient care report during a training on how to use iPads.

21.    Plaintiff immediately reported the comment to Director Kircher, who instructed Supervisor Garing to apologize to Plaintiff.

22.    On October 10, 2017, Supervisor Coleman slouched down in a chair in Plaintiff's office and looked at Plaintiff with a visible erection in his pants.

23. In or around August 2018, Defendant hired Paramedic Davies, who had left his employment at Mt. Lebanon Fire Department, and promoted Davies to Crew Chief within a few months.

24. Crew Chief Davies thereafter began to behave inappropriately towards Plaintiff, such as engaging in unsafe driving practices, including two incidents that placed Plaintiff in jeopardy.

25. Plaintiff reported Crew Chief Davies' unsafe conduct to Defendant; however, no corrective action was taken.

26. In addition, Crew Chief Davies kicked Plaintiff in her buttocks on several occasions and kneed Plaintiff in her buttocks on one occasion.

27. At first Plaintiff thought he was just joking around, but the conduct persisted and made Plaintiff feel uncomfortable.

28. In December 2018, Defendant mailed post card invitations to Defendant's holiday party; the invitations included a photo of Paramedic Crew Chief Bill Turkovich and Paramedic Jeff Ninehouser posing with Assistant Director Porter, who was wearing a sexually explicit holiday sweater depicting deer having sex.

29. Copies of the above invitation were displayed throughout Plaintiff's workplace for three years.

30. In Spring 2019, during a daily training session on moving large individuals by using a "manSAC", Plaintiff was participating by laying down on the "manSAC" and Crew Chief Davies asked Assistant Director Porter if he wanted to "get on top" of Plaintiff.

31. In May 2019, Plaintiff began to receive reports of Crew Chief Davies behaving inappropriately towards other female colleagues.

32. In May 2019, Paramedic Kristen McTaggart told Plaintiff about an incident where Crew Chief Davies brought sex toys into the workplace and showed them the sex toys and engaged in sexually offensive conversation with them.

33. On May 29, 2019, Operational Supervisor Coleman, who was allegedly having relationship issues, met with Plaintiff at a nearby park to discuss the same.

34. During their conversation, Coleman's manner became odd and he openly held his phone out for several minutes that had a picture of a naked woman's buttocks that was plainly visible on the screen.

35. Plaintiff became uncomfortable and left as soon as she had an excuse to do so.

36. Approximately one week later, Supervisor Coleman exposed his erect penis to Plaintiff.

37. In June 2019, Paramedic Ninehouser reported to Plaintiff that Crew Chief Davies was sexually harassing Paramedic McTaggart.

38. On August 5, 2019, Crew Chief Charles Reinert told Plaintiff that Crew Chief Davies was sexually harassing female employee.

39. On August 5, 2019, Plaintiff reported to Assistant Director Porter that Crew Chief Davies was sexually harassing Paramedic McTaggart and other female employees; Assistant Director Porter who responded that he could take no action without the names of victims and specific information.

40. In response, Plaintiff told Assistant Director Porter the names of the female employees who were subjected to sexual harassment, including: Paramedic McTaggart, Volunteer PHRN Elizabeth Konieczny, and myself.

41. Assistant Director Porter told Plaintiff that he would speak with Director Kircher and follow up with Plaintiff, however Assistant Director Porter did not follow up with Plaintiff.

42. In August 2019, at Defendant's company picnic, which was held at the Ross Township Community Center, Plaintiff was approached by Crew Chief Richard Biernstein while she was eating a hot dog. Crew Chief Biernstein asked Plaintiff, "is there a vein in that hot dog" insinuating that Plaintiff was performing fellatio.

43. On September 6, 2019, while Supervisor Coleman was present in Plaintiff's office, Paramedic Glen Pritchard entered, closed the door and reported that Crew Chief Davies had just smacked Paramedic McTaggart's buttocks; Plaintiff waited until Paramedic Pritchard left the office before Plaintiff reminded Supervisor Coleman that Plaintiff reported a similar incident between Crew Chief Davies and Paramedic McTaggart the prior month.

44. On September 7, 2019, at an all staff training where Crew Chief Davies was teaching how to remove rings and other impaling/constrictive items and how to remove patients from impaled objects, there was a mannequin with unzipped pants and a hot dog symbolizing a penis with a ring on it and Crew Chief Davies asked Plaintiff to remove the ring.

45. Plaintiff ignored Crew Chief Davies' request and a few minutes later, threw away the hot dog.

46. After the training session ended and Crew Chief Davies asked the group to set up the station for the next group, Plaintiff noticed that someone placed another hot dog on the mannequin.

47. Plaintiff immediately reported the above incident to Assistant Director Porter, who directed Plaintiff to submit a written complaint about the hot dog incident and the August 5, 2019 verbal report of sexual harassment by Crew Chief Davies' of female employees.

48. On September 8, 2019, Plaintiff complied with the request by emailing Assistant Director Porter.

49. On April 7, 2020, Supervisor Coleman asked Plaintiff if she "had anyone for him" as he was feeling "really horny".

50. On October 5, 2020, Paramedic Andrew Bell asked Plaintiff if she would post a picture of the previous weekend's rescue training onto Defendant's Facebook page. When Plaintiff responded in the affirmative, Paramedic Bell, texted her a picture of himself cupping the genitalia of Paramedic Ninehouser.

51. On October 22, 2020, Plaintiff entered the employee kitchen where EMT Chris Galbreath and Paramedic Bell, two of her male colleagues, were talking. Upon Plaintiff's entrance to the kitchen, EMT Galbreath, asked her if she had reviewed the new CPR guidelines that were recently issued by the American Heart Association.

52. When Plaintiff had responded that she had not yet done so, EMT Galbreath remarked that the rate of breathing had been changed to once every six seconds from once every five.

53. Plaintiff remarked that seven years ago, the American Heart Association had recommended compression only CPR on adults. In response to Plaintiff's comment, EMT Galbreath mimicked performing fellatio in the presence of Plaintiff and Paramedic Bell.

54. In addition to the above, Defendant has treated Plaintiff differently from her male colleagues in other respects, including but not limited to the following:

   a. Defendant pays for the cell phone and cell phone bill of male employees in similar positions as Plaintiff, but does not pay for Plaintiff's cell phone;

   b. Defendant's policy is to pay for damage to personal property of employees that occurs during the course of work. In 2011, Plaintiff's laptop was broken while teaching CPR at a local high school. Contrary to its policy, Defendant refused to reimburse Plaintiff for the full replacement cost of her laptop but instead only paid her half of the same;

   c. Defendant provides to all employees in similar positions to Plaintiff a company credit card, however, Defendant has not provided Plaintiff with a company credit card; and

   d. Defendant provides "comp time" to male supervisors who work more than 48 hours a week, but does not provide any "comp time" to Plaintiff, who regularly works more than 48 hours a week.

55. Plaintiff's mental health has deteriorated as a result of the sexually hostile work environment and retaliation she faces within her workplace. She requires regular mental therapy for the same.

56. Yet despite numerous complaints to management, the egregious conduct has continued without surcease.

### Count I
### Title VII Sex Harassment

57. Plaintiff incorporates paragraphs 1 through 56 as though the same had been fully set forth at length herein.

58. Defendant's actions directed to Plaintiff created a sexually hostile work environment.

59. The sexual harassment of Plaintiff was intentional and offensive to her

because of her sex, female.

60. The sexual harassment of Plaintiff was severe or pervasive in that she was repeatedly subjected to offensive, hostile and derogatory work conditions because of her sex, female.

61. The sexual harassment, through Defendant's agents, servants, and employees, detrimentally affected Plaintiff.

62. Defendant's actions, through its agents and servants, as set forth above, would detrimentally affect a reasonable individual in Plaintiff's position.

63. Defendant either knew or should have known of the existence of a sexually hostile environment.

64. Despite such knowledge, Defendant failed to take prompt and adequate remedial action to prevent and to stop the conduct.

65. Defendant's actions affected Plaintiff in the terms and conditions of her employment because of her sex, female, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

66. Defendant acted intentionally and in reckless indifference to Plaintiff's federally protected right to not be subjected to unwelcome and unwanted conduct of a sexual nature.

67. As a direct and proximate result of Defendant's illegal harassment, Plaintiff suffered severe humiliation, inconvenience, mental distress, embarrassment, and like conditions as well as a loss of income and fringe benefits, loss of reputation and lost career opportunities.

WHEREFORE, Plaintiff demands judgment pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991 as follows:

    a.    That Defendants be permanently enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by Title VII;

    b.    The award of compensation of Plaintiff for all earnings and other benefits including retirement benefits which Plaintiff would have received but for the discriminatory acts of Defendant as well as the foreclosure of promotional opportunities;

    c.    The award of any pre-judgment interest on any back pay;

    d.    That Plaintiff be awarded against Defendant compensatory damages to compensate for pain, suffering, emotional distress and humiliation she has suffered as a result of Defendant's conduct;

    e.    That Plaintiff be awarded against Defendant punitive damages in an amount to be awarded at trial;

    f.    That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorneys fee; and

    g.    That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

### Count II
### Title VII Sex Discrimination

68.    Plaintiff incorporates paragraphs 1 through 67 as though the same had been fully set forth at length herein.

69.    Defendant has treated Plaintiff disparately than Plaintiff's male colleagues in certain terms and conditions of Plaintiff's treatment, including but not limited to:

    a.    not providing Plaintiff with a cell phone plan;

    b.    not providing Plaintiff with a company credit card;

    c.    not reimbursing Plaintiff for the full value of personal equipment that

    was broken in the course of performing her job;

  d.  not compensating Plaintiff at a supervisory level, compared to similarly situated males, despite promising to do so.

70. Defendant's disparate treatment of Plaintiff is because of her sex, female, in violation of 42 U.S.C. § 2000e-2(a)(1).

71. As a direct and proximate result of Defendant's illegal harassment, Plaintiff suffered severe humiliation, inconvenience, mental distress, embarrassment, and like conditions as well as a loss of income and fringe benefits, loss of reputation and lost career opportunities.

WHEREFORE, Plaintiff demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991 as follows:

  a.  That Defendants be permanently enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by Title VII;

  b.  The award of compensation of Plaintiff for all earnings and other benefits including retirement benefits which Plaintiff would have received but for the discriminatory acts of Defendant as well as the foreclosure of promotional opportunities;

  c.  The award of any pre-judgment interest on any back pay;

  d.  That Plaintiff be awarded against Defendant compensatory damages to compensate for pain, suffering, emotional distress and humiliation she has suffered as a result of Defendant's conduct;

  e.  That Plaintiff be awarded against Defendant punitive damages in an amount to be awarded at trial;

  f.  That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorneys fee; and

      g.      That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

## Count III
## Title VII Retaliation

72. Plaintiff incorporates paragraphs 1 through 71 as though the same had been fully set forth at length herein.

73. Plaintiff opposed unwelcome sexual comments and conduct, which she in good faith believed were illegal conduct under federal and state anti-discrimination laws.

74. Plaintiff complained about the unwelcome sexual comments and conduct to various members of Defendant's management.

75. Defendant ignored Plaintiff's complaints of sexual harassment.

76. Defendant discriminated against Plaintiff and refused to provide Plaintiff with various conditions of employment in retaliation for her protected activity.

77. As a direct and proximate result of Defendant's illegal retaliation, Plaintiff suffered severe humiliation, inconvenience, mental distress, embarrassment, and like conditions as well as a loss of income and fringe benefits, loss of reputation and lost career opportunities.

WHEREFORE, Plaintiff demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991 as follows:

      a.      That Defendants be permanently enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by Title VII;

      b.      The award of compensation of Plaintiff for all earnings and other benefits including retirement benefits which Plaintiff would have received but for the discriminatory acts of Defendant as well as the foreclosure of promotional opportunities;

    c.    The award of any pre-judgment interest on any back pay;

    d.    That Plaintiff be awarded against Defendant compensatory damages to compensate for pain, suffering, emotional distress and humiliation she has suffered as a result of Defendant's conduct;

    e.    That Plaintiff be awarded against Defendant punitive damages in an amount to be awarded at trial;

    f.    That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorneys fee; and

    g.    That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

## Count IV
## 42 U.S.C. § 1983

78. Plaintiff incorporates paragraphs 1 through 77 as though the same had been fully set forth at length herein.

79. At all times material hereto, Defendant had authority to establish state policy with regard to employment and treatment of all employees at the Ross/West View EMS facilities.

80. Plaintiff had an equal protection right under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1981 to not be intentionally treated differently from others similarly situated where there was no rational basis for such difference in treatment.

81. The treatment of Plaintiff was intentionally different from that given to other employees and there was no rational basis for such difference in treatment.

82. The treatment of Plaintiff at the hands of Defendant under the circumstances constitutes reckless disregard of Plaintiff's Equal Protection right to be free

from intentional treatment different from others similarly situated where there is no rational basis for such difference in treatment.

83. The improper treatment of Plaintiff at the hands of Defendant was continuous and ongoing commencing about three decades ago and continuing until the present.

84. Plaintiff has suffered and is now suffering and will continue to suffer irreparable injury by virtue of the continuing acts and omissions of Defendant.

85. Plaintiff has no adequate remedy at law to redress these violations of her constitutional rights other than this action for injunctive, declaratory, compensatory and other relief.

86. As a direct result of the injuries sustained by Plaintiff, Plaintiff is entitled to damages as set forth in the above paragraphs.

87. Because the discriminatory treatment of Plaintiff by Defendant was willful or in reckless disregard of Plaintiff's civil rights Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff requests the following:

    a. The entry of a declaratory judgment finding that the usages, customs, practices, and policies of Defendant violate the rights secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States of America and by 42 U.S.C. §1983.

    b. The entry of a permanent injunction enjoining Defendant from engaging in each of the unlawful acts, practices, policies, customs, and usages set forth herein, and from continuing any and all other practices shown to be in violation of applicable law so that the Defendant no longer discriminates on the basis of sex.

    c. The award of compensation of Plaintiff for all earnings and other benefits including retirement benefits which Plaintiff would have received but for the discriminatory

    acts of Defendant as well as the foreclosure of promotional opportunities.

  d. The award of any pre-judgment interest on any back pay.

  e. That Plaintiff be awarded against Defendant compensatory damages to compensate for pain, suffering, emotional distress and humiliation she has suffered as a result of Defendant's conduct;

  f. That Plaintiff be awarded punitive damages in an amount to be determined at trial;

  g. That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorneys fee; and

  h. That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

**Count IV**
**PHRA**

88. Plaintiff incorporates paragraphs 1 through 87 as though the same had been fully set forth at length herein.

89. Defendant's discrimination, harassment and retaliation of Plaintiff was in violation of the PHRA, 43 Pa. Conns. Stat.Ann. § 955(a) *et seq*.

90. As a direct result of Defendant's discriminatory actions in violation of the PHRA, Plaintiff has lost wages and other economic benefits of her employment with Defendant, in addition to suffering extreme emotional distress, depression, and like conditions.

WHEREFORE, Plaintiff demands judgment pursuant to the PHRA, 43 P.S. 621, *et seq.* as follows:

  a. The entry of a declaratory judgment finding that the usages, customs, practices, and policies of Defendant

      violate the rights secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States of America and by 42 U.S.C. §1983.

b.     The entry of a permanent injunction enjoining Defendant from engaging in each of the unlawful acts, practices, policies, customs, and usages set forth herein, and from continuing any and all other practices shown to be in violation of applicable law so that the Defendant no longer discriminate on the basis of sex.

c.     The award of compensation of Plaintiff for all earnings and other benefits including retirement benefits which Plaintiff would have received but for the discriminatory acts of Defendant as well as the foreclosure of promotional opportunities.

d.     The award of any pre-judgment interest on any back pay.

e.     That Plaintiff be awarded against Defendant compensatory damages to compensate for pain, suffering, emotional distress and humiliation she has suffered as a result of Defendant's conduct;

f.     That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorneys fee; and

g.     That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

                Respectfully submitted:

                *s/ Colleen E. Ramage*
                Colleen E. Ramage
                PA I.D. No. 64413
                Nikki Velisaris Lykos
                PA I.D. No. 204813
                Ramage Lykos, LLC
                525 William Penn Place, 28th Floor
                Pittsburgh, PA  15219
                (412) 325-7700
                cramage@ramagelykos.law
                nlykos@ramagelykos.law
                Attorneys for Plaintiff